**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole H. Lea, | No. CV-14-01694-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff Nicole H. Lea seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for supplemental security income under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

## I. Background.

Plaintiff, a 41-year-old female, previously worked as a cab driver and courier. She has an eighth-grade education. On April 14, 2008, she applied for supplemental security income alleging disability beginning March 1, 2007. On April 7, 2010, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On July 12, 2010, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council granted Plaintiff's

request for review and remanded the case to the ALJ.  Plaintiff appeared at another hearing with her attorney on January 29, 2013, to provide additional testimony.  A vocational expert also testified.  On March 8, 2013, the ALJ issued a decision that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review, making the ALJ's March 2013 decision the Commissioner's final decision.

**II.    Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.*  As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.   The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii).  If not, the claimant is not disabled and the inquiry ends.  *Id.*  At step

three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  If not, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work.  § 404.1520(a)(4)(iv).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience.  § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 14, 2008, the date of application.  At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar depressive disorder with psychosis; borderline personality disorder; and cannabis, opioid and alcohol abuse.  A.R. 119.  At step three, the ALJ determined that Plaintiff does have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  This determination, however, accounted for Plaintiff's substance use disorders.  *Id.*  The ALJ further concluded that if Plaintiff discontinued substance abuse she would continue to have a severe impairment or combination of impairments, but those impairments would not meet or medically equal any of the impairments listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  A.R. 120.  At step four, the ALJ found that Plaintiff has the following RFC:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she would be limited to simple work with occasional, superficial interaction with others.

A.R. 121.  The ALJ found that even if Plaintiff stopped the substance abuse, she would be unable to perform any of her past relevant work.  A.R. 125.  At step five, the ALJ

concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  A.R. 126.

**IV.    Analysis.**

Plaintiff argues that the ALJ's decision is defective for two reasons: (1) the ALJ's RFC determination lacks substantial evidence because the opinion of a treating physician and two social workers were not afforded appropriate weight, and (2) the ALJ improperly discredited Plaintiff's testimony as to the severity of her symptoms.

**A.    Weighing Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Dr. Russell Gilbert, social worker Alice Alibrio, and social worker Judith Buelhner.  The Court will address the ALJ's treatment of each opinion below.

**1.    Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).  If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).  A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2.      Russell Gilbert, M.D.

On December 31, 2012, Dr. Russell Gilbert, Plaintiff's treating physician, evaluated her functional capacity. A.R. 1604-05. The medical opinion consists of a standard "check-the-box" form, wherein Dr. Gilbert checked boxes ranging from "none" to "extreme" indicating Plaintiff's level of limitation for each functional area. Although Dr. Gilbert is a treating source, the ALJ declined to afford his opinion great weight because "the doctor gave little explanation to his findings and only stated that the claimant was 'likely' not able to sustain full-time employment due to her mental illness." A.R. 125. The ALJ also noted that the opinion was "vague and not supported by the record and the claimant's continued substance abuse." *Id.*

Dr. Gilbert concluded that Plaintiff had "marked" limitations in the following functional areas:  interaction with the public, interaction with supervisors, interaction with coworkers, responding appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting. A.R. 1604-05. Dr. Gilbert then listed Plaintiff's "bipolar disorder and borderline personality disorder" as the reasons supporting his findings. A.R. 1605.

Dr. Gilbert's medical opinion was contradicted by the opinions of Dr. Brent Geary (A.R. 450-55), Dr. Elliot Salk (A.R. 521-28), and Dr. Tracy Ristich (A.R. 1162-68). All three sources opined Plaintiff had greater abilities than those identified in Dr. Gilbert's

opinion.  All three doctors gave consistent opinions and all three examined Plaintiff during times of sobriety.  Dr. Geary opined that Plaintiff had "mild limitations" in social interaction and "moderate limitations" in adaptation.  A.R. 454.  Dr. Salk found Plaintiff had anxiety and poor motivation, which would interfere with adapting to change and social interaction.  A.R. 527.  Dr. Ristich concluded that Plaintiff had only "mild to moderate limitations" in social interaction, such as responding appropriately to supervision and ability to get along with coworkers.  A.R. 1166.  Dr. Ristich also noted that Plaintiff had "moderate to marked limitations" in adapting to change in the workplace.  *Id.*  Unlike Dr. Gilbert's check-the-box form, all three opinions contain extensive supporting clinical evidence including behavioral observations and medical histories.

Plaintiff claims that Dr. Gilbert was not required to submit evidence in support of his findings because "[t]here are more than 1000 pages of behavioral health records in the Court transcript."  Doc. 16 at 3.  This argument misses the point.  If Dr. Gilbert relied on such records, he should have discussed them in his opinion.  The ALJ need only rely on medical opinions that are supported by the administrative record.  She is not required to speculate as to the basis for Dr. Gilbert's findings.  In her decision, the ALJ noted the vagueness of Dr. Gilbert's report; summarized the clinical evidence and contradictory findings by Drs. Geary, Salk, and Ristich; and clearly stated her interpretation of the evidence.  *Cotton*, 799 F.2d at 1408.  The ALJ therefore discounted Dr. Gilbert's opinion with specific and legitimate reasons supported by substantial evidence.  *Lester*, 81 F.3d at 830-31.

### 3.   Social Workers Judith Buelhner and Alice Alibrio.

Plaintiff was also examined by two licensed social workers, Judith Buelhner and Alice Alibrio.  Like Dr. Gilbert, Ms. Buelhner and Ms. Alibrio filled out standardized check-the-box forms indicating the degree of limitation Plaintiff suffered for each functional category, ranging from "none" to "extreme."  A.R. 682-83, 906-07, 1301-02.  The ALJ afforded the opinions little weight because they were "made by licensed social

workers [and] can only be used to help our understanding of the record as a whole.  In no case [are they] entitled to consideration as the opinion of a treating source."  A.R. 125.  Plaintiff asserts these reports should have been afforded "great weight."

The Social Security Regulations differentiate between "acceptable" medical sources, which include licensed physicians, psychologists, optometrists, and podiatrists, and "other" medical sources, which include nurse-practitioners, physicians' assistants, and public and private social welfare agency personnel.  20 C.F.R. § 416.913(a) & (d).  ALJs may not discount "other" medical sources without explanation, but they may afford them less weight if the ALJ provides "germane" reasons.  *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (noting that an ALJ may reject testimony from "other" sources if he provides "germane" reasons); *see also* SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) (explaining that an "acceptable" medical source opinion may be afforded greater weight than an "other" medical source because "acceptable" medical source opinions come from "the most qualified health care professionals").  Germane reasons include opinions that are "conclusory" or that are provided via "standardized, check-the-box form[s]" that fail to include supporting clinical evidence.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)).  "Inconsistency with medical evidence" is another germane reason.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The Court finds that the ALJ did not err in affording little weight to the opinions.  Ms. Buelhner's report dated February 22, 2011, provides no explanation for her findings.  A.R. 907.  Ms. Alibrio completed two reports dated June 21, 2011, and July 28, 2011, both of which provide some explanation at the end of the form.  A.R. 683, 1302.  The two reports, however, are almost exactly the same, and instead of providing evidence to support her findings, she merely records Plaintiff's self-reported symptoms.  *Id.*  Neither Ms. Buelhner's report nor Ms. Alibrio's reports contain any objective medical evidence, and they are the same check-the-box forms that Dr. Gilbert completed, which the ALJ found "vague and unsupported by the record . . . ."  A.R. 125.

The ALJ properly afforded great weight to the opinions of Drs. Geary, Salk, and Ristich, all of whom reported limitations that directly contradict Ms. Buelhner and Ms. Alibrio's opinions.  For example, Dr. Ristich's conclusion in September 2011 that Plaintiff had no limitations in her ability to understand and remember simple instructions directly conflicts with Ms. Alibrio's June 2011 finding that Plaintiff had marked limitations in the same functional area.  A.R. 682, 1166 (emphasis added).  The record contains several of these direct contradictions, and the ALJ was certainly entitled to credit the medical opinions of the licensed physicians over those of the social workers.

The Ninth Circuit has held that "if an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations." *Molina*, 674 F.3d at 1121.  Further, if the ALJ lists germane reasons for discounting similar testimony elsewhere in the decision, the court cannot "reverse the agency merely because the ALJ did not 'clearly link [her] determination to those reasons.'" *Id.* (quoting *Lewis*, 236 F.3d at 512).  Here, the ALJ did not explicitly list her reasons for discounting the social workers' opinions, but she previously provided specific reasons supported by substantial evidence for discounting Dr. Gilbert's check-the-box opinion.  Those same reasons apply to the social workers' testimony, both of whom used a similar standardized form as Dr. Gilbert and found approximately the same limitations.  Thus, the ALJ's germane reasons easily can be traced back to her analysis of Dr. Gilbert's opinion.

Even assuming *arguendo* that the ALJ failed to adequately provide germane reasons for discrediting the "other" sources, the error is harmless.  Harmless error principles apply in the Social Security Act context.  *Id.* at 1115.  An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination.  *Id.*  The claimant usually bears the burden of showing that an error is harmful.  *Id.* at 1111.  Plaintiff does not argue that the uncontradicted opinions of Drs. Geary, Salk, and Ristich are flawed, nor does she submit

evidence that the social workers examined Plaintiff during a period of sobriety, a factor the ALJ reasonably considered in her analysis.  Plaintiff has therefore failed to meet her burden in showing harm and presents no evidence that had the ALJ credited the opinions, the disability determination would have been affected.

### 4.     The ALJ's RFC is Supported by Substantial Evidence.

Plaintiff last asserts that the vocational expert found Plaintiff unemployable at the hearing in March.  This argument is misleading.   The line of questioning Plaintiff references was conducted by Plaintiff's counsel and began by asking the vocational expert to define "moderate" as "approximately 10 percent off task" and "marked" as "11 to 15 percent" off task.  A.R. 53.  Counsel then asked the vocational expert to consider a hypothetical person with "moderate limitations in understanding, remembering detailed instructions, moderate limitations in ability to make judgments on simple work-related decisions" as well as "marked limitations" in social functioning and adaptation.  A.R. 54.  After considering these factors, the vocational expert opined that this hypothetical person could not work.

The hypothetical posed by Plaintiff's counsel is based largely on the check-the-box forms completed by Dr. Gilbert, Ms. Buelhner, and Ms. Alibrio.  As stated above, the ALJ properly afforded these opinions little weight, and thus they were not material to the ALJ's RFC.  Instead, the ALJ relied on three consistent medical source opinions, which Plaintiff does not challenge.  The ALJ provided specific reasons in support of the RFC and rationally interpreted all of the evidence in the record.  Therefore, the RFC is supported by substantial evidence.

### B.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so, and if there is no evidence of malingering, (2) reject the claimant's testimony

about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.  In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a work environment.

At the hearing, Plaintiff testified that she has a hard time concentrating and experiences depression from her bipolar disorder.  A.R. 38.  The disorder also causes daily mood swings and panic attacks during stressful situations.  *Id.*  In fact, she claimed to have been suffering from a panic attack during the hearing.  *Id.*  Plaintiff stated that she has only two friends that she hardly ever sees and has trouble making decisions.  A.R. 39. She does not trust other people and tends to shut people out.  A.R. 40.  She has trouble with her memory and has to write things down to remember them.  *Id.*  Plaintiff also claims that she experiences auditory hallucinations.  *Id.*  She hears things "all the time" and talks to her voices to "make them shut up."  *Id.*  This causes her to accidentally "blurt out" offensive words.  A.R. 41.  She experiences a great deal of paranoia and night sweats and nightmares.  *Id.*  She takes naps often and experiences pain on a daily basis. A.R. 42.  When asked about the range of pain she experiences on a scale of 0 to 10, she claimed it was a "5."  *Id.*

Plaintiff also claimed that she took her required medication on a daily basis and sets an alarm to remind her to do so.  A.R. 43.  She stated that she has a history of alcoholism, but that she has been sober since 2009.  *Id.*  She also claimed that she has fibromyalgia that prevents her from lifting more than 10 pounds.  *Id.*  When asked why she could not work five, eight-hour days a week, she said that she takes naps a lot, is constantly confused, has to be reminded of things, and has to be instructed several times to perform tasks. A.R. 44.  Plaintiff stated that she used to use marijuana every week, but

has abstained since November 2012.  A.R. 45.  She also claimed that she has been to her pain management clinic once.  *Id.*

Plaintiff testified that she cannot perform certain daily activities of living, such as doing dishes, vacuuming, and mopping.  A.R. 48.  On most days, she listens to music, takes a nap, pets her cat, colors, and watches movies.  *Id.*

The ALJ gave several reasons for finding Plaintiff's testimony not fully credible. First, the medical evidence indicated that Plaintiff continues to abuse marijuana, alcohol, and opioids.  A.R. 124.  The ALJ found that Plaintiff made several inconsistent statements about her alcohol use.  At the hearing, Plaintiff claimed she had not used alcohol since 2009, but she was arrested for DUI in January 2010.  In 2011, she claimed that she was sober from alcohol and marijuana since 2009, but she admitted using marijuana in January 2010 and tested positive for cannabinoids in March 2011 and November 2012.  Plaintiff also repeatedly failed to take medication in accordance with her doctor's orders.

Second, although Plaintiff claims she cannot perform many functions because of fibromyalgia and chronic pain, she has not sought "any aggressive treatment for any pain disorder."  *Id.*  Instead, Plaintiff abuses medications and marijuana and has relapsed several times.  The record shows Plaintiff is "quite functional when she is not abusing substances and is taking her medications."  *Id.*  For example, in December 2012, she was functional and able to arrange all the details surrounding her upcoming surgery. A.R. 1626-27.  The clinic notes indicate that Plaintiff called to change the time for her pick up by the taxi company and that she "verbalized understanding and intent to independently complete this task."  A.R. 1627.  Plaintiff also informed the therapist that her boyfriend would call with a post-surgical update.  *Id.*  She was fully aware of her circumstances and she managed them accordingly.

Third, the ALJ noted that Plaintiff is not motivated.  A.R. 125.  This fact was reflected in Plaintiff's medical records, including Dr. Geary's observation that Plaintiff "is generally unproductive, unmotivated, and is a high risk for relapse on alcohol."

A.R. 453.  The ALJ found that Plaintiff's lack of motivation is a "conscious decision" given that she appears to have adequate motivation when she is on her prescribed medication and not using illicit substances.  A.R. 125.  The ALJ found that the lack of motivation erodes Plaintiff's credibility.  *Id.*

Fourth, the ALJ noted that Plaintiff's claims of hallucinations were "vague at best."  A.R. 125.  At the hearing, Plaintiff provided no specifics regarding the "voices" that she hears.  She admitted that the hallucinations would stop when she properly took her prescribed medication.  A.R. 522.

Plaintiff argues that none of the physicians found that Plaintiff "conflate[s] her symptoms related to drug or alcohol abuse."  Doc. 16, at 4.  But there is no evidence that any physician examined Plaintiff both when she was sober and when she was abusing substances, and the three doctors that found her functional examined her during periods of sobriety.  A.R. 125.  The ALJ is entitled to make reasonable inferences based on the medical evidence in the record.  During times of sobriety, Plaintiff has greater functional capacity, both physically and mentally.  During times of substance abuse, the record indicates that her problems are aggravated.

In sum, the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony regarding the severity and frequency of her symptoms.  Each reason is supported by the medical evidence in the record.  Therefore, the ALJ did not err in evaluating Plaintiff's credibility.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**.  The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 4th day of March, 2015.

David G. Campbell
United States District Judge